February 17, 2026

Carolyn S Mitchell
Complainant

Vs
David P. Steiner
Postmaster General
United States Postal Service
Agency
475 L'Enfant Plaza SW
Washington, DC 20260-3100

EEOC Reconsideration 2025003409 (12/18/25)
OFO 2024000991 (6/12/2025)

EEOC 450-2022-00213X
Agency Case No. 4G-752-0260-21

**JURY TRIAL**

**4-26CV-171-Y**

**OFO Appeal 11/13/23 (2022000079) Remanded**
**Compliance (2022001623)**
**OFO Appeal 6/12/25 (2024000991)**

8/19/2021 – Formal Complaint (omitted for Investigation File)
9/13/2021 – Dismissal of Formal Complaint
10/1/2021 – OFO Appeal 2022000079
1/31/2022 – OFO Decision (Remand Collateral Attack)
    -   Request a Hearing
10/26/22 – Notice of Case Assignment Judge Brett Bell
2/28/24 – Complainant response to MSJ
10/4/24 – Judge Enter Summary Judge's Brett Bell Decision
10/19/24 – Agency Final Action
11/13/24 – OFO Appeal 2024000991
06/12/25 – OFO Decision
07/07/25 – Reconsideration Appeal 2025003049
12/18/25 – Reconsideration Decision (Exhibit G)

- Agency and all Courts has failed to accept or investigate the **complainant's claim of continual violation of harassment/hostile work environment** that would deter any reasonable person from participating in protected activity (reprisal animus)

Complainant request the Court to accept claim of continual harassment/hostile work environment claim 2001-present which would deter any reasonable person from participating in protected activity (severe and pervasive) for the purpose of accessing **liability for Jury Trial. (See Exhibit A-Exhibit F)**

The basis of this instant matter is continual violation of harassment/hostile work environment based on reprisal (prior EEO activity) which would deter a reasonable person from participating in protected activity (see Complainant's formal complaint.

In retaliation for my prior protected activity (EEO complaints and grievances) in violation of Title VII of the Civil Rights Act of 1964 (42 USC §§ 2000e et seq.)(3a), codified 704; Title VII antidiscrimination prohibition when:

**Formal Complaint (attached Exhibit A, (attached pages 9-94)**

**<u>Issue 1</u>: Discrimination Factors**
In violation of Title VII of the Civil Rights Act of 1964 (42 USC §§ 2000e et seq.) (Retaliation) for Prior EEOC Activity **(Continual Violation of Harassment/Hostile Work Environment due to participated in protected activity) (Reprisal)**

**<u>Issue 2. 16.  Description of Incident/Action</u>**

In reprisal for participation in protected Activity, On May 18, 2021 through June 7, 2021 USPS Management incorrected processed personnel form 50s changed my Step grade, base salary, and cancelling over 300 hours of my annual leave. .  I have suffered continual mental anguish and should be compensated $20,000 for the years of **continual harassment** and denial of privileges and benefits and credit toward my retirement. These continual acts of reprisal would deter any reasonable person from participating in protected activity

I am seeking to be restored to my original position EAS 17 before I filed EEO in 2001.  Restore lost hours 12,475.00 from 2001 to 2008, plus 6240 work hours lost before I was converted to career in 2015 @ EAS 17 rate, restore all annual leave and sick leave, Thrift Saving plan match and benefits and credit toward my retirement.

1. **Genuine Issue of Material Fact:**  Whether complainant's continual violation of harassment/hostile work environment (severe and pervasive) is a viable claim under Title VII that should have received pre-counseling in violation 29 CFR 1614.105-106 so liability can be accessed.

 I am seeking to be restored to my original position EAS 17 before I filed EEO in 2001.  Restore lost hours 12,475.00 from 2001 to 2008, plus 6240 work hours lost before I was converted to career in 2015 @ EAS 17 rate, restore all annual leave and sick leave, Thrift Saving plan match (pg 11-14)

The basis of this instant matter is continual violation of harassment/hostile work environment based on reprisal (prior EEO activity) which would deter a reasonable person from participating in protected activity (see Complainant's formal complaint (IF 6-15).

**<u>Series of Events of Continual Harassment/Hostile Work Environment (severe and pervasive) which would deter any reasonable person from participating in protected activity (reprisal) 2001-present (loss of employment,  compensation and benefits, a single employment practice (see attached pages 1-88)</u>**

In retaliation for my prior protected activity (EEO complaints and grievances) in violation of Title VII of the Civil Rights Act of 1964 (42 USC §§ 2000e et seq.)(3a), codified 704; Title VII antidiscrimination prohibition when:

2

My name is Carolyn Sapp Mitchell, a 21 year veteran. I was employed by the Postal Service from September 20, **1980 (pg 15).** I was promoted as a Supervisor, Remote Encoding Center in June, 1994 **(pg 16).** I performed at an exceptional level until I begin to receive harassment from Management and Union representative in the year of 2000 after a adverse arbitration award against the United States Postal Service. Most of the employees employed were employees assigned to my supervision. Some of the harassment I receive was frivolous grievances, threats, shown partial nude pictures, "This is you". I reported this harassment to management, no corrective measures were taken to correct the problems. I took off work on August 16, 2001 on FMLA until September 6, 2002. The Agency placed me in involuntary leave without pay (LWOP)**(pg 10)** after my many requests to return to work. After trying to resolve issues with management at every level, to no avail. I filed an EEO and a National Labor Relation Board charge. I requested to return to work the Agency was also less than responsive. I remained on the roll for 8 years. The Agency waited six years to issue me a Letter of Separation (9/6/07) **(pg 33-35)** less than 30 days before I was to file my first EEO claim in Federal Court 9/24/07. (1-cv-07-650) I received the right to file letter dated 9/27/07. I filed the Formal Complaint on 10/1/07. All my adverse works action from 2001 to 2008 was dismissed for failure to exhaust my administrative remedies prior to filing in federal court in 2009 **(pg 50-1 -50-3)** (Agency continuing systemic practice of procedural maneuvering to cause a plaintiff claim (adverse work actions) to be dismissed violating 29 CFR 1614.105-106)

After losing all my benefits, In 2011 the Postal Service reemployed me, as a Postal Support Employee (PSE), a temporary job guaranteed 2 hours per day of work,**(pg 52-65)** no benefits, even after they stated there was no jobs in the Postal Service I can do. I remained in this role for 5 years before returning to career status, PS 6 from PS 17 **(pg 66, pg 16)**.9/28/17, Incorrect termination date used in Career Appt in Previous Calculation (pg 87) I continued to suffer discriminatory retaliatory treatment through this **instant complaint 4G-760-0260-21 (pg 68-86)**

I have also suffered emotional pain and suffering and humiliation, including injury to my reputation. I have suffered major depression, anxiety, panic disorder, paranoid personality disorder, and was under a doctor's care because of this continual threatening, hostile work environment.

My financial status has also suffered when my house was almost foreclosed for only two thousand dollars, I lose by health insurance for myself and family, I have to go on public assistance (welfare) and unemployment **(pages 10-1-10-2)**when I could have been working on a job I had for 21 years. I was also unable to pay for children tuition to college in 2001 and 2007.

I lose my future retirement after 21 years of service because I chose not to voluntary retire (pg 29-8 -29-9) or request disability retirement.

I have lose compensation, promotions, benefits and privileges and refused a reasonable accommodation because of retaliation (prior EEO activity). I suffered emotional distress, economic harm casually connected to Agency intentional discriminatory actions of malicious, reckless, retaliatory actions because I filed EEO's to protect her rights and speaking out for the rights of myself and others.

It must be noted that through Ms. Sapp's (Mitchell) continued efforts to return to work beginning in 2002 Ms. Sapp remained on a prolonged suspension wholly to the agency's own judgment (pg 10, pg 14). The record shows evidence that demonstrates the flow of the EEOC Complaint filing, interactive process and denial of accommodations occurred consistently following the completion of the EEO investigation in violation of the internal policy and procedure on the appropriate timing of handling requests to return to work whether the reasonable accommodation or light duty requests handled through the DRAC committee.

In summary, as retaliation in response to Ms. Sapp's (Mitchell) protective activity, she was placed in an indefinite enforced leave due to medical reasons starting December 16, 2002 depriving her of pay and more so an opportunity to return to full-time employment in her position before leave or reassigned to a vacant funded position as required by matter of law.

Ms Mitchell received other discriminatory actions which in federal court from 2014-2017. (1:13-cv-718)(Eastern District Court, Beaumont, Texas)

Mr. Smith, REC Manager, testified "She was a good supervisor, always considered very bright— and, you know, just never had any concerns about her in terms of discipline or anything of that nature, for the most part. **(736:10-13).** (11/19/03 Hearing)

Ms Rains testified Ms Sapp "…was knowledgeable and really pleasant to work with" **(226:12-13)** Rains also testified Ms Sapp is very pleasant in a classroom atmosphere **(227:1-2).** (11/18/03 Hearing).

**Don Hale (Sapp Manager)**

Q. On April 25, 2001, the day after Ms Sapp received this nude picture from the employees, did Ms Sapp come into your office and give you a handwritten notice saying that she wanted to file a formal complaint with Danny Smith and did you advise her—did you tell her—could you tell the court what statement you made to Ms Sapp at that time?
A. We was talking about the grievance activity. You was talking about the activity about the employees complaining; and I said, "**If it was me, I wouldn't**; but I said, "It's up to you." And I said, "If it was me, I wouldn't." 692:13-693:16 (965-956)
Q. After Ms Sapp talked to you about that picture and you said that—you said, "I wouldn't file an EEO if I were you," or something to that effect, did you ever keep her from filing an EEO complaint?
A. Oh no, No. I—any—an employee don't even have to mention—tell supervisor they are going to file an EEO. That's their—they can do it on their own, file EEO 719:7-14

**"But For"**

On 5/8/07, Ms. Sapp receives a response from Cliff Rucker, "This acknowledge receipt of the correspondence dated April 19, 2007, regarding assistance with returning to work. At this time, it would be inappropriate for me to respond because the matter is presently moving forward in the EEO process. If additional information is needed, please do not hesitate to contact Elizabeth Anderson, Manager, Human Resources, Houston District at 713-226-3716 **(pg 29-6)**

4

On 6/6/2007 John Dymond states " She should have been fired years ago **(pg 29-7)**

On 12/4/07- (internal communication) I just read Kimball's decision from this summer in John's case with Sapp. **We do NOT want to bring this woman back**. It seems to me that if Garvey is just focusing on the recent removal, than our back pay liability is relatively small, she doesn't have an attorney so there are no fees at issue. It seems to me that we need to fight this case and then we should be done with her for good as a result of the RIF. Amen! We absolutely don't want this liability back (pg 41)

**Listed below are continual acts of harassment/hostile work environment (reprisal) when you file a discrimination claim.**

- On 12/5/02 – Sapp request to RTW with reasonable accommodation-No **response (pg 9)**

- **Danny Smith - What was the reason the complainant had to wait more than thirty days after making a request for light duty and requesting reasonable accommodation?** Danny Smith response Issue 4A was " I do not know with any certainty. I may assume that deliberation, research, and that timing of request; was made during December which is our busiest time of the year. However, the information was forwarded from us to DRAC on 12/12/02. (2/10/03**)**

- In a motion, Agency Reply to Appellant Response to Motion to Dismiss, the Postal Service states as an undisputed fact "She first asked to come back to work, with accommodation, on December 16, 2002, however, the Postal Service did not comply**. Instead, it put her on involuntary …LWOP status (pg 10)**

- On or before December 18, 2002, the USPS in response to Ms. Sapp's filing for unemployment, Ms. Sapp became aware that she had been **permanently laid off. (pg 10-1)**

- **1/3/03 – 2564-A -Request to Return to Work and Reasonable Accommodations (No Right to File/PS Form 2565) (Not Addressed by Courts)**

- On 2/25/03 – Ms Sapp writes Houston District Human Resource Manager Pat Syall **"When do you predict I will return to work**? This request was made by Ms Sapp after she received no response to her 12/5/02 return to work to Mr. Smith, Nurse Hart and DRAC Manager Phil Pelch – No response

- Mr. Smith, REC Manager, testified "She was a good supervisor, always considered very bright—and, you know, just never had any concerns about her in terms of discipline or anything of that nature, for the most part. **(736:10-13).** (11/19/03 Hearing)

- According to her supervisor, Danny Smith, if Sapp wants to come back to work, she should contact him with updated medical indicating whether she can perform the duties of her position or what her current restrictions are. **He was waiting on a resolution of the EEO complaint process before telling her that she needed to return to work. (pg 29-2-29-3)**

- On 3/14/06, 4/13/06 and 4/22/06, Ms. Sapp request to RTW with no response for over 70 days (2197-2208)(2193-2196). During the 8/22/07 hearing on EEO# 2 before AJ Kimbal, when questioned about the time delay, Manager Smith responds, **"Well, there were a number of EEO's you had filed, and I had to go through all of your documentation, because you—to ensure that I responded to this accurately, because as—as an example, there was an EEO on the table, so I didn't want to say something that was not factual.** So I had to go through my file to make sure I had all the documentation and what the documentations were… (171:18-172:10)v(Amius to EEO activity)

- On 11/28/2006 Ms. Sapp was scheduled for Fitness for Duty examination and release to **work**

- On 11/29/06, Manager Smith commences disciplinary action for removal. On the Notice Disciplinary Action -Form 1080 –Danny Smith states " DRAC reviewed Ms Sapp's medical restrictions and compared them to the essentials functions of available funded positions and concluded that she did not qualify under the reasonable accommodation due to fact one major life functions was not affected. Please refer to DRAC letter dated 11/9/06. Also Ms Sapp brought in a return to work restrictions on 11/28/06 with the same restrictions as the previous documentation dated 6/10/03. *Her restrictions were not to have contact with Manager/Supervisor Danny Smith, Don Hale and Jennifer Henson…Ms Sapp's medical limitations were the same as stated above as well as working a modified schedule of 7:00 am-3:30 pm with Sat/Sun and supervision 15-20 employees*

- 5/1/07- Thomas Blum, USPS Attorney - Email states "My first question is how can somebody possibly have been off duty since 2001 and not have been removed by now?...Somebody in the District needs to take accountability for this employee, review her medical certification, send her for a FFD, whatever-and then make a final call."…I reviewed her attached letter and this is just the kind of piecemeal response (if she claims and representation of facts are true) that could end up with a finding against the agency. I couldn't tell if she has an EEO pending which may impact our response**…." (pg 29-1-29-2)**

- On 5/8/07, Ms. Sapp receives a response from Cliff Rucker, "This acknowledge receipt of the correspondence dated April 19, 2007, regarding assistance with returning to work. At this time, it would be inappropriate for me to respond because the matter is presently moving forward in the EEO process. If additional information is needed, please do not hesitate to contact Elizabeth Anderson, Manager, Human Resources, Houston District at 713-226-3716 **(pg 29-6)**

- On 5/8/2007 Ms. Sapp received correspondence from Ms. Elizabeth Anderson, Human Resource Manager on job vacancies…"two Beaumont vacancies have not been posted. We are holding these vacancies until you have been given an opportunity for development details and/or training…"

- On 5/14/2007, Ms. Sapp responds to Ms. Anderson requesting the placement and development assignments outlined in her 5/8/2007 letter with no response from Ms. Anderson.

- On 6/6/07 in an internal communication, John Dymond states, I'm glad to see the District moving forward on this, especially in light of the up-coming changes for the REC (closure/reassignment/RIF). I was actually going to call Liz and see if something could be done before Sapp was caught up in the transition.

- On 6/6/2007 John Dymond states " She should have been fired years ago **(pg 29-7)**

- On 6/8/07, Ms Sapp offered voluntary retirement. **(pg 29-8-29-9)**

- On 6/11/2007 Ms. Sapp was issued a notice proposing to remove her due to her inability to perform the essential functions of her position.

- On July 2, 2007, OFO final decision determined that Ms. Sapp as a "person with a disability". In addition, in his evaluation, AJ Kimball also determined Ms. Sapp to be a "person with a disability." Even after Ms. Sapp was determined to be a "person with a disability", on December 4, 2007, the Postal Service file a motion to compel Ms. Sapp to produce a medical authorization to obtain all of Ms. Sapp's medical records some of which were not related to the issues in question.

- On 7/2/07, Ms. Sapp was denied amendment of her removal action to be heard in EEOC#2, even though Ms. Sapp's separation was referenced in AJ Kimball final decision

- On 7/25/07 after receiving the notice of proposed separation, Ms. Sapp meets Postmaster David Critelli about reassignment after Sapp declared "person with disability". Ms. Sapp also requested reassignment to two jobs (Tobe Hahn and South End) under Critelli jurisdiction that she believed meet her restrictions.

- **On 8/20/07 Interview scheduled for Supervisor, EAS 17 (pg 30)**

- 8/22/07 Hearing on EEO #2 before AJ Kimbal 10 months after Ms. Sapp's 10/18/06 request.

- On 8/23/07 after receiving the notice of proposed separation, Ms. Sapp had a *competitive* interview for Tobe Hahn and SE Station Supervisor position (Customer Service) with Postmaster David Critelli. However, REC Supervisor Janeen Smith and Pamela Graham was awarded these positions.

- On 9/5/07 – All Beaumont REC supervisors including Ms. Sapp received RIF letter for job opportunity to avoid RIF by 11/9/07. However Ms. Sapp was RIF on 4/14/08 and backdated to **11/9/07  (pg 31-32) (pg 48-50)**

- On 9/6/2007 Ms. Sapp received final **Letter of Separation** from Postal Service for inability to perform the function of position based on medical limitations **(pg 33-35)**

- On 9/12/07 in his decision, Judge Kimball states "Subsequently, on about June 11, 2007, the Agency proposed the Complainant's removal for a medical inability to perform the essential functions of her job, and subsequently the Complainant was removed from her position.

- OFO appeal was initiated October, 2004 and decision was issued 7/2/07 (3 years later) and she had to file in federal court by October 1, 2007 (90 days) (Procedural Maneuvering)

7

- On 9/24/07 – Sapp instituted the suit in district court based on EEO#1(continual violation to RTW), EEO#2,(continual violation to RTW and EEO#3(removal action) (1:07-cv-650).

- On 9/27/27 – Right to File Letter for removal action 6/11/07 and 9/6/07. Ms Mitchell (Sapp) requested to return to work since 2002 and was placed on involuntary leave without pay (Procedural Maneuvering)

- On 10/1/2007 – Ms Sapp filed her formal complaint

- On 10/1/07, Ms. Sapp files both EEO #3 MSPB #1. The Postal Service issued Sapp a Letter of Decision on 9/6/07 and gave her the right to file MSPB (removal, disability, race sex). Sapp later ask to amend to constructive suspension and seek compensation under CSRA after the Agency rescinded the removal action on 11/1/07. AJ Garvey failed to respond. Final Disposition was on 8/21/08 . Then on 9/27/2007, Ms. Sapp is issued a right to file the formal complaint in EEO #3; *60 days after* 7/20/07 initiation of EEO#3 and *3 days after* suit filed in district court. Ms. Sapp withdrew EEO# 3 after Postal Service rescinded the removal action and asked for reinstatement, reassignment and back pay with no response **(pg 36-37)**

- On 10/23/07 The Beaumont Encoding Center closed and all EAS supervisor reassigned to avoid RIF

- On 11/1/2007 *after* the suit was filed and after Beaumont REC closed with all supervisors reassigned, the removal action was rescinded. The reason provided by the Postal Service is found in an October 2007 internal communication "After reviewing the attached documents, our headquarters law department is recommending that you rescind the removal action and issue Ms Sapp a RIF notice consistent with the other notices sent re the REC center. The course of action will avoid litigating the "merits" of her return to work/disciplinary action…. The drop dead date for getting this rescinded and a RIF letter issued is November 7th". Later on 11/21/07 In the <u>Agency Reply to Appellant's Response to Motion to Dismiss,</u> the Postal Service states "indeed the separation was never effectuated. Appellant's most recent Form 50 is dated September 1, 2007, which was after the Letter of the Decision was issued**. (pg 36)**

- On 10/29/2007, The Postal Service is found in an October 2007 internal communication "After reviewing the attached documents, our headquarters law department is recommending that you rescind the removal action and issue Ms Sapp a RIF notice consistent with the other notices sent re the REC center. **(pg 37)**

- **On 11/1/2007, Agency rescinded removal action but failed to return Ms Sapp to work (pg 38)**

- On 11/5/2007, Ms. Sapp requested to be reassigned to a funded vacant position and reinstated from involuntary LWOP which the Agency placed her in since December 16, 2002. Ms Sapp also requested to be placed in an active pay status. Ms Sapp received no response. **(pg 39)**

- Ms. Sapp withdrew EEO #3. It would have been a futile effort to continue. The rescinded termination was later treated as a moot.

- On 11/13/2007, Ms Sapp/Mitchell was removed on 11/9/07 based on disability (not OWCP) **(pg 40)**

- On 12/4/07- (internal communication) I just read Kimball's decision from this summer in John's case with Sapp. **We do NOT want to bring this woman back**. It seems to me that if Garvey is just focusing on the recent removal, than our back pay liability is relatively small, she doesn't have an attorney so there are no fees at issue. It seems to me that we need to fight this case and then we should be done with her for good as a result of the RIF. Amen! We absolutely don't want this liability back **(pg 41)**

- On 12/4/07, a telephonic hearing was held with Judge Garvey to review issues to hearing i.e. the removal action, disability (failure to accommodate, disparate treatment. Later on 12/17/2007 reprisal was added . The removal was deem moot but Judge Garvey failed require the Postal Service to compensate Appellant. This telephonic hearing was omitted from sworn affidavit by the custodian of EEO files for the Postal Service when submitted by Agency on 7/1/09

- **Agency failed to give Right to File Letter/PS Form 2565 for Reduction in Force (RIF) but issued a Final Agency Decision 8/25/08 (Not Address by the Courts)**

- **4/14/08 – (Reduction in Force)** First, Ms Sapp was informed in April 2007 that the Beaumont REC was being shut down and the supervisory employees would need to find a assignment outside that facility . Second, Ms Sapp received in June 2007 a Notice of Proposed Separation, proposing her separation due to her inability to perform the duties of her position. On September 5, 2007, Sapp was given a "Specific Notice of Reduction-In-Force" stating that a reduction-in-force (RIF) was being conducted at the Beaumont REC and that she would be separated on November 9, 2007 pursuant to that RIF. The following day, Ms Sapp was issued a Letter of Decision upholding the reasoning in the Notice of Proposed Separation and stating that she would be removed on September 14, 2007. On November 1, 2007, however, the Postal Service rescinded the Notice of Proposed Separation and Letter of Decision and return Ms Sapp to LWOP status . **Ms Sapp was still subject to the RIF and she was informed in April 2008 that she was being separated pursuant to the RIF (pg 29-1)**

- **5/8/08 Ms Sapp's personnel action backdated removal date as 11/9/07. (pg 48-50)**

- **8/25/08 – Agency Final Action – No administrative exhaustion at EEO stage**

- **8/26/08 – Court Issue Summons (Plaintiff filed in federal court on 9/24/07). In 2009, Partial Dismissal in federal court, claim was not heard but dismissed as exhausted claim <u>after</u> she initial file in court 9/24/07.**

- 

  - PARTIAL FINAL JUDGMENT **(pg 50-1-50-4)**
    - 

- Having granted defendant's partial motion to dismiss, it is **ORDERED, ADJUDGED, AND DECREED** that all claims under 42 U.S.C.$1981, and all claims under Title VII and the Rehabilitation Act for which administrative remedies were not exhausted prior to

instituting this action are **DISMISSED.  Such claims were first presented to administrative agencies _after_ this action was instituted and are as follows:  (Doc 62)**

- PARTIAL FINAL JUDGMENT (1:07-cv-650)
- 
- Having granted defendant's partial motion to dismiss, it is **ORDERED, ADJUDGED, AND DECREED** that all claims under 42 U.S.C.$1981, and all claims under Title VII and the Rehabilitation Act for which administrative remedies were not exhausted prior to instituting this action are **DISMISSED.  Such claims were first presented to administrative agencies _after_ this action was instituted and are as follows:  (Doc 62)**

- **1.  Claims asserted in the Equal Employment Opportunity complaint submitted on October 1, 2007, docketed as Agency No. 1G-774-0005-07, containing allegations of unlawful discrimination and retaliation based on (a) USPS's June 11, 2007, Notice of Proposed Removal, (b) its September 5, 2007, notice that Ms Sapp would be terminated pursuant to a RIF, and (c) its September 6, 2007, Letter of Decision terminating Ms Sapp for cause**

- **2.  Claims asserted in the appeal to the Merit System Protection Board on October 10, 2007, docketed as No. DA-0752-08-0030-I-1, complaining of race, sex, disability and retaliation discrimination with respect to the USPS Letter of Decision dated September 6, 2007.**

- **3.  Claims asserted in the appeal to the Merit System Protection Board on December 5, 2007, docketed as No DA-0752-08-0116-I-1, complaining again of USPS's Notice of Proposed Separation (June 11, 2007) and Letter of Decision (September 6, 2007)**

- **4.  Claims asserted in the Equal Employment Opportunity complaint submitted on March 27, 2008, docketed as Agency No. 1G-774-0001-08, containing allegations raised and decided in previous administrative proceedings.**

- **(Hired as PSE, TEMP)** On 9/30/11, Debra Jolivet, Hamshire OIC  in response to an EEO Pre-counseling interview states, …I interviewed her…asked her about why she was no longer employed and she stated that she retired…The reason as to why never came up. After she left, I spoke to several employees.  Don Hale –(409-504-4616), Plant Manager of Beaumont who was her supervisor at the Remote Encoding Center when she left the postal service, stated that she was considered **AWOL** when she left and recommended I not hire her and Nurse Jennifer Campbell (1-713-226-3449) who stated that she had lawsuits pending and some medical issues going on currently and that she would not recommend I hire her also. **(pg 51)**

- After losing all my benefits, In 2011 the Postal Service reemployed me, as a Postal Support Employee (PSE), a temporary job, no benefits, even after they stated there was no jobs in the Postal Service I can do. **(pg 51-52)**

- June 2011, Ms. Mitchell applied for a temporary Job Postal Support Employee (PSE) at seven post office guaranteed only 2 hours a day.

- 2011-2015 – Ms Mitchell remain in temporary status for five (5 years) **(pg 54-64)**

- Ms Mitchell was one of the first employees hired as a Postal Support Employee (PSE) in 2011 but the last employee from the 2011 roll to be converted to career in 2015. (pg 89)

- On November 3, 2015, Per Arbitration Award (G 10C-4G-C 14087335), Ms Mitchell was **awarded a Career position** after 13 years of not being unable to return to work (21 year veteran prior to this protected activity) **(pg 92-94)**

- On December 11, 2015, Ms Mitchell was returned to career status PS 6 from PS 17**(pg 65-67)**

- On October 4, 2016, EE is not a re-employed annuitant; correct REC and CMS due to excessive LWOP in 2002; Prior career service from 1980 to 2008.  Sent mail to LWOP team for LWOP from 2002 to 2008 **(pg 14)**

- On September 28, 2017, Incorrect Termination Date used in Career Appt in Previous Calculation **(pg 87)**

- On December 12, 2015 and  January 16, 2021 grievances were filed for Agency not complying with the effective date of the career conversion **(pg 90-91)**

- **Instant Complaint 4G-760-0260-21, Continual denial of benefits and privileges (personnel actions) to convert Ms Mitchell to career status (pg 68-86)**

Agency failed to correct Complaint's new career date for 5 years (2015-2021).  Complainant's original career date was 1980.  The Agency failed to return her to work 2002 for 8 years but she remained on the rolls until 11/9/07.  She was rehired in temp job guaranteed 2 hours per day in 2011.  After 5 years (2015) the Agency converted her back to career and Agency took 5 years to complete personnel actions.  These actions continue to show that the Agency unlawful employment practices denied Complainant employment, promotions, denial of compensation and other benefits for more than 20 years

**Formal Complaint**

**Issue 1: Discrimination Factors**
In violation of Title VII of the Civil Rights Act of 1964 (42 USC §§ 2000e et seq.) (Retaliation) for Prior EEOC Activity **(Continual Violation of Harassment/Hostile Work Environment due to participated in protected activity) (Reprisal)**

**Issue 2. 16.  Description of Incident/Action**

In reprisal for participation in protected Activity, On May 18, 2021 through June 7, 2021 USPS Management incorrected processed personnel form 50s changed my Step grade, base salary, and

11

cancelling over 300 hours of my annual leave. I have suffered continual mental anguish and should be compensated $20,000 for the years of **continual harassment** and denial of privileges and benefits and credit toward my retirement. These continual acts of reprisal would deter any reasonable person from participating in protected activity

- Ms Mitchell 2025 Annuity Report shows years of service as 38 years but if she would have not experienced these retaliatory actions she would have had 45 years of service.

**Reprisal without administrative exhaustion is REAL.**

Carolyn Mitchell          2/17/26

Carolyn Mitchell
950 Spencer Ct, Apt 811
Fort Worth, Texas 76120
(409) 351-2227
carolynsmitchell@yahoo.com

CERTIFICATE OF SERIVCE

I, Carolyn Mitchell certify that I have entered this Filing to be filed in federal court in Tarrant County, Texas on February 16, 2026

12/18/25 Reconsideration Decision 2025003049

Exhibit A – Formal Complaint
Exhibit B – DRS Report
Exhibit C- Dismissal of Formal Complaint
Exhibit D – Acknowledgement/Remanded Issues
Exhibit E - Mitchell's Affidavit – Ongoing Harassment/Hostile Work Environment
Exhibit F- Excel Worksheet of Continual Harassment/Hostile Work Environment in Investigation File
Exhibit G - 12/18/25 Reconsideration Decision 2025003049


Enclosed (series of ongoing pattern of harassment/hostile work environment (reprisal animus) 94 attachments

*Carolyn Mitchell 2/17/26*